| | |
|---|---|
| RYAN KUCIK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      CAUSE NO.: 2:08-CV-161-TS |
| | ) |
| YAMAHA MOTOR CORPORATION, | ) |
| U.S.A., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Ryan Kucik initiated this product liability suit against Defendant Yamaha Motor Corporation, U.S.A., alleging that injuries he suffered during his operation of a 2006 YZ250 FV motorcycle were caused by Yamaha's use of defective intake valves. The Defendant seeks summary judgment pursuant to Federal Rule of Civil Procedure 56 on all the Plaintiff's claims.

## BACKGROUND

On May 2, 2008, the Plaintiff sued the Defendant in Lake Superior Court alleging that the Yamaha motorcycle that he had owned was defective and unreasonably dangerous because it was designed, manufactured, and sold with defective intake valves. The Plaintiff asserted claims for common law carelessness and negligence, strict tort liability, breach of an implied warranty of merchantability, and reckless indifference. On May 27, the Defendant removed the case to federal district court, invoking the court's jurisdiction under 28 U.S.C. §§ 1441 and 1332. The Defendant filed its Answer on June 3, 2008.

On June 15, 2009, the Defendant filed a Motion to Dismiss Plaintiff's Claim Due to Plaintiff's Spoliation of Evidence. The Defendant asserted that because the Plaintiff sold the

motorcycle before he filed suit, and because the current owner and location were unknown, the Defendant had been deprived of the opportunity to inspect the motorcycle and its components. In response, the Plaintiff submitted that it was the Defendant that had exclusive possession and control of the valves at issue, and that the Plaintiff only sold the motorcycle after the defective valves had been replaced, and because he could no longer ride the bike or afford to own it. The Defendant filed a Reply, asserting that the Defendant never had possession of the motorcycle or any of its component parts, that the Defendant was a distinct legal entity from the dealerships that sold and serviced the motorcycle, that the Defendant did not design or manufacture the motorcycle, and that the Plaintiff failed to disclose any expert witnesses. On December 23, 2009, the Court issued an Opinion and Order denying the Defendant's Motion to Dismiss. The Court found no sanctionable conduct because the Plaintiff did not have reason to know that litigation was imminent when he sold the motorcycle and did not act in bad faith. The Court noted that even if spoliation occurred, the Defendant's argument that dismissal was the only appropriate sanction because of the great prejudice it had suffered was not persuasive because it was the Plaintiff who bore the burden of proof on his claims and would have the greater risk of suffering a prejudice from being unable to locate the motorcycle. The Court declined to address the issues about naming the entity that manufactured the motorcycle and the consequence of any failure to file an expert report as matters that were more appropriate for resolution upon a dispositive or pretrial motion, or at trial.

On March 5, 2010, the Defendant filed a Motion for Summary Judgment [DE 36] and Brief in Support [DE 37], and Appendix [DE 38]. The Defendant asserts that summary judgment is appropriate for three reasons: (1) the Plaintiff is unable to prove his products liability claim

under Indiana law without the motorcycle; (2) the Plaintiff failed to provide a compliant expert report and without expert testimony his case fails as a matter of law; and (3) the Defendant is only the American distributor of Yamaha motorcycles and had no role in the design or manufacture of the product. The Defendant also moves for summary judgment on the Plaintiff's claim that he is entitled to punitive damages.

On March 31, the Plaintiff filed his Brief in Response to Defendant's Motion for Summary Judgment [DE 39] and Appendix [DE 40]. The Plaintiff maintains that he has produced a certified mechanic, Jeff Kluga, who is familiar with the recall of the defective intake valves on 2006 Yamaha YZ250F motorcycles, and who can offer his opinion, based on the facts of this case and his training and experience, that a defect in the valves caused or substantially contributed to the Plaintiff's accident. The Plaintiff contends that a disputed issue exists whether the Defendant can be held liable as the seller of a defective product and as the sole distributor for a foreign manufacturer over which this Court is unable to hold jurisdiction. He also asserts that it would be premature to make any ruling on punitive damages.

In its Reply Brief [DE 41], filed on April 6, the Defendant argues that the post-accident recall notice issued to the Plaintiff as the owner of a 2006 Yamaha YZ250F motorcycle is inadmissible under Federal Rule of Evidence 407 as a subsequent remedial measure. Therefore, the Defendant argues, the recall notice cannot be used to create a genuine issue of material fact. The Defendant also argues that Kluga's report was not timely served on the Defendant and does not meet the requirements of Rule 26. The Defendant contends that the report, which is in letter form, is inadmissible hearsay which cannot be considered for purposes of summary judgment. The Defendant also reiterates that it is entitled to summary judgment because it did not design or

manufacture the motorcycle, and asserts that the statutory exception cited by the Plaintiff does not apply because the entity that did manufacture the motorcycle has, in past lawsuits, been subject to the jurisdiction of American courts and would be subject to the jurisdiction of this Court.

On April 16, the Plaintiff filed his Sur-Reply in Opposition to Defendant's Motion for Summary Judgment [DE 42], arguing that the recall notice is admissible evidence, that Kluga's report complies with Rule 26, and that the Defendant should be considered the manufacturer of the motorcycle for purposes of liability under the Indiana Products Liability Act because it has failed to establish that the principal manufacturer, Yamaha Motor Co. Ltd., is subject to the jurisdiction of this Court.

## STATEMENT OF FACTS

The Plaintiff purchased a 2006 Yamaha YZ250F motorcycle from Loomis Cycle and Marine on March 1, 2006. On May 6, 2006, the Plaintiff was injured when he was riding the motorcycle and it lost power during an attempted jump.

Shortly after his accident, on June 12, 2006, the Plaintiff received a letter from the Defendant advising that some intake valves manufactured for the YZ250 had experienced fatigue in the neck area when operated at maximum RPM, causing loss of power and possible engine failure. The Defendant's letter advised that the Plaintiff's YZ may have been built with these valves, and the Defendant offered to replace all three intake valves without charge if the Plaintiff made an appointment with a dealer to replace the valves.

On August 8, Maxim Power Sports replaced the valves on the Plaintiff's motorcycle, and

did so free of charge as promised in the Defendant's letter. No other repairs were made to the bike, and Maxim Power Sports retained the original valves. The Plaintiff sold the motorcycle soon after these repairs were made. Neither the motorcycle or its component parts have been inspected or examined to determine whether they contained any defects, including the defect in the intake valves that was the subject of the recall notice.

## DISCUSSION

In Count I of his Complaint, the Plaintiff alleges that the Defendant "designed, manufactured, sold with actual knowledge of the defect in the product and propensity for the motorcycle to lose power or experience engine failure and placed in the stream of commerce the aforesaid motorcycle that was not reasonably safe for the purposes for which it was intended and which was defective and unreasonably dangerous when it left possession and control of the defendant . . . and failed to provide adequate warning and instructions as to said motorcycles's dangerous propensities, safe and proper method of use, and steps taken to prevent injury." (Pl.'s Compl. ¶ 5.) The Plaintiff asserts that his injuries were the result of the Defendant's "common law carelessness and negligence and further, as a result of its breach of duty and its strict liability in tort." (*Id.* ¶ 7.) In Count II, the Plaintiff alleges that the condition of the motorcycle breached an implied warranty of merchantability, and in Count III he alleges that his injuries were the result of willful and malicious misconduct and reckless indifference to his safety.

A federal court sitting in diversity applies state substantive law and federal procedural law. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 754 (7th Cir. 2004). The Federal Rules of Civil Procedure states that a court should grant summary judgment "if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In Indiana, the Indiana Products Liability Act (IPLA), codified at Indiana Code §§ 34-20-1-1 *et seq.*, governs all actions that are "(1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal theory or theories upon which the action is brought." Ind. Code § 34-20-1-1. The IPLA supplants the Plaintiff's common law claims because they are brought by a user or consumer against a manufacturer or seller for physical harm caused by a product. *See Butler v. City of Peru*, 733 N.E.2d 912, 918 n.2 (Ind. 2000). However, a plaintiff may still maintain a separate cause of action under a breach of warranty theory. *See Hitachi Constr. Mach. Co. v. AMAX Coal Co.*, 737 N.E.2d 460, 465 (Ind. Ct. App. 2000); *but see Condon v. Carl J. Reinke & Sons, Inc.*, 575 N.E.2d 17, 18 (Ind. Ct. App. 1991) (stating that "the theory of implied warranty in product liability actions has been superceded by the theory of strict liability").

A product may be defective within the meaning of the IPLA because of a manufacturing flaw, a design defect, or a failure to warn of the dangers associated with the product's use. *Cook v. Ford Motor Co.*, 913 N.E.2d 311, 319 (Ind. Ct. App. 2009). As a general rule, a manufacturer will be liable for a defective product regardless of whether the manufacturer has exercised all reasonable care in the manufacture and preparation of the product (strict liability). Ind. Code §

34-20-2-2. However, if the plaintiff alleges that the product was defectively designed, or that the manufacturer failed to provide adequate warnings or instructions regarding the use of the product, then the plaintiff must establish that the manufacturer failed to exercise reasonable care under the circumstances. *Id.*; *see also Cook*, 913 N.E.2d at 320 (stating that cases alleging a failure to adequately warn under the IPLA sound in negligence); *Birch v. Midwest Garage Door Sys.*, 790 N.E.2d 504, 518 (Ind. Ct. App. 2003) (stating that a party making a claim for inadequate warnings must show that the defendant "failed to exercise reasonable care under the circumstances . . . in providing the warnings or instructions").

On the basis of the same operative set of facts, the Plaintiff has asserted that the motorcycle was defective in each of the three areas of product defect: manufacturing, design, and warning. Each claim relies on there first being a defect in the intake valves. With respect to strict liability actions, the plaintiff must prove that: (1) the product was defective and unreasonably dangerous; (2) the defective condition existed at the time the product left the defendant's control; and (3) the defective condition was the proximate cause of the plaintiff's injuries. *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007) (citing *Coffman v. PSI Energy, Inc.*, 815 N.E.2d 522, 527 (Ind. Ct. App. 2004)). Likewise, to prevail on a claim of negligence, a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach. *Rushford*, 868 N.E.2d at 810 (citing *Benton v. City of Oakland City*, 721 N.E.2d 224, 232 (Ind. 1999)). The Plaintiff must present evidence from which a jury could reasonably conclude that the Defendant put "into the stream of commerce [a] product in a defective condition unreasonably dangerous to any user or consumer." Ind. Code § 34-20-2-1; *Survey of Recent Developments in Indiana*

*Product Liability Law*, 39 Ind. L. Rev. 1145, 1153 (2006) (stating that "only products that are in a 'defective condition' are ones for which IPLA liability may attach").

## A.    Product Defects

A product is defective if, at the time it is conveyed by the seller to another party, it is in a condition: (1) not contemplated by reasonable persons among those considered expected users or consumers of the product; and (2) that will be unreasonably dangerous to the expected user or consumer when used in reasonably expectable ways of handling or consumption. Ind. Code § 34-20-4-1; *Baker v. Heye-America*, 799 N.E.2d 1135, 1140 (Ind. Ct. App. 2003). "Accordingly, under the IPLA, the plaintiff must prove that the product was in a defective condition that rendered it unreasonably dangerous." *Baker*, 799 N.E.2d at 1140. The requirement that the product be in a defective condition focuses on the product itself. *Id.* (stating that the unreasonably dangerous requirement, in contrast, focuses on the reasonable expectations of the consumer); *see also Schultz v. Ford Motor Co.*, 857 N.E.2d 977, 985 (Ind. 2006) (noting that it is the plaintiff that bears the burden of proving defect in a product liability action). Where the existence of a defect depends on matters beyond the common understanding of a lay juror, admissible expert testimony is required to sustain the plaintiff's burden of proof on the question. *See Owens. v. Ford Motor Co.*, 297 F. Supp. 2d 1099, 1103–04 (S.D. Ind. 2003).

In this case, a pivotal question is whether the loss of engine power that the Plaintiff experienced while operating a Yamaha YZ250 FV was the result of a defect in the motorcycle, particularly to its intake valves. The Plaintiff relies on the findings of Jeff Kluga, a certified motorcycle mechanic, to explain the operation of intake valves and exhaust valves during the

different phases of a 4-stroke engine.[1] After providing this explanation, Kluga states that "[i]f the intake valves are not manufactured properly, there can be a failure at the neck area when operated at the maximum RPMs, causing power loss or engine failure," and explains, mechanically, how this failure would occur. (Kluga Letter, DE 40-10 at 2.) He submits that a motorcycle that lost engine power at high RPMs would lose momentum and nose dive in mid air.[2] Kluga states that he is "familiar with the recall on the 2006 YZ250FV Yamaha motorcycle due to defective intake valves causing a loss of power and engine failure," and that it is his understanding that the Plaintiff, "while operating his Yamaha motorcycle and attempting a jump, the motorcycle lost power and the engine failed throwing [the Plaintiff] forward and causing the bike to nosedive." (*Id.* at 3.) He then opines, based on his training and experience, "that a defect in the valves of [the Plaintiff's] motorcycle caused or substantially contributed to the accident in question." (*Id.*)

For a witness to be considered an expert, Federal Rule of Civil Procedure 702 requires that person to be qualified as such "by knowledge, skill, experience, training, or education." Kluga is qualified by his experience and training as a certified motorcycle mechanic. But it is not enough that the proposed testimony comes from a qualified witness. "'[Q]ualifications alone do not suffice. A supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and

[1] The Defendant lodges several challenges to Kluga's report, including that it is deficient under Rule 26, that it was not timely provided to the Defendant, and that it is inadmissible hearsay. The Court does not find any of these to be a proper basis to strike Kluga's report.

[2] Common sense dictates that a "nose dive in mid air" could only occur if the bike has left the ground, such as when the operator is attempting a jump. Kluga does not indicate what would happen if the bike was not in the air when the loss of power occurs, presumably because the Plaintiff in this case states that he was attempting a jump when the motorcycle lost engine power.

relevant under the test set forth by the Supreme Court in *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)].'" *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (quoting *Clark v. Takata Corp.*, 192 F.3d 750, 759 n. 5 (7th Cir. 1999)). Evidence must be "genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996). "Either 'hands-on testing' or 'review of experimental, statistical, or other scientific data generated by others in the field' may suffice as a reasonable methodology upon which to base an opinion." *Clark*, 192 F.3d at 758 (citing *Cummins v. Lyle Indus.*, 93 F.3d 362, 369 (7th Cir. 1996)).

Kluga's conclusion, that the Plaintiff's accident was caused by defective valves, is not based on any methodology, much less one that produces a reliable conclusion that the Plaintiff's bike contained a defect. Unless Kluga first establishes that the bike's valves were defective, he cannot render an opinion on the issue of causation. But Kluga's conclusion on this threshold matter is based on the following circular reasoning: (1) *if* an intake valve is defective, a motorcycle being operated at high RPMs can lose engine power, and (2) because the Plaintiff's motorcycle lost engine power while being operated at maximum RPMs, it was due to a defective valve. This is not scientific. Although Kluga reliably explains how valves mechanically and technically operate and how a defective valve could cause loss of power, no one appears to question the conclusion that defective valves can indeed cause loss of power or engine failure. (The recall notice advised of this danger.) The issue in dispute, and the one the Plaintiff's evidence must address in order to be helpful, is whether the Plaintiff's bike was one that contained this particular defect. Kluga's opinion on this matter is unscientific speculation offered by a genuine motorcycle mechanic. *Cf. Hammes v. Yamaha Motor Corp., U.S.A., Inc.*, 2006 WL

1195907, at *4 (D. Minn. May 4, 2006) (finding that the expert's opinion that the plaintiff's motorcycle lacked proper and safe design was sufficiently reliable when he relied on tests performed by Yamaha's safety experts, conducted two visual inspections of the motorcycle and the relevant component parts, reviewed witness testimony, and did not base his opinion solely on evidence that a recall was performed). Kluga did not examine the motorcycle or others of the same model, did not examine or test the intake valves or others manufactured in the same lot, and did not attempt to eliminate other potential causes of loss of engine power. According to Kluga's letter, the defect identified in the recall is the only specific cause of the Plaintiff's accident that he considered. Rather than attempting to prove the existence of such a defect in the Plaintiff's motorcycle, he assumed it.

The most that Kluga can testify to is that the circumstances of the Plaintiff's accident are consistent with the type of defect that existed in some valves that were manufactured for the Yamaha YZ motorcycles. The Plaintiff, for all practical purposes, is relying on the recall notice to prove liability. A jury, if it was allowed to consider the recall notice as admissible evidence, could draw this same conclusion without the aid of expert testimony because the recall notice itself acknowledges that some intake valves had experienced fatigue at the neck area when operated at maximum RPM, causing loss of power and possible engine failure. But it would be improper for any jury to conclude that the Plaintiff's motorcycle more likely than not contained this specific defect on the basis of the recall notice. The Federal Rules of Evidence provide that "[w]hen, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . a defect in the product [or] a defect in the product's

design." Fed. R. Evid. 407. The notes to the 1997 Amendments to Rule 407 indicate that the

prohibition against using evidence of subsequent remedial measures to prove product and design

defects was an adoption of the view of the majority of circuits, including the Seventh Circuit,

that had interpreted Rule 407 to apply to product liability actions. The Defendant's recall notice

was issued after the Plaintiff's accident. If the Plaintiff had received the notice before the

accident and taken the motorcycle to the dealership to replace the valves, it might have made his

injuries less likely to occur. Therefore, the recall notice is a subsequent remedial measure. The

Plaintiff offers the recall notice as evidence that his motorcycle contained a defective

component. *See, e.g.,* Pl.'s Sur-Reply at 5. DE 42 (arguing that the "recall letter is admissible as

part of the plaintiff's proof of a defect"). This purpose falls squarely within Rule 407's bar.[3] The

---

[3] Holding that a recall letter fell within the ambit of Rule 407's prohibition, a district court in the Southern District of Alabama made the following observation:

> There is considerable authority from other jurisdictions that product recalls such as that at issue here, and occurring after the injury or harm, are not admissible to prove a product defect. *See, e.g., Rutledge v. Harley-Davidson Motor Co.*, 2010 WL 445498, *3 (5th Cir. Feb. 3, 2010) (where motorcycle manufacturer issued recall notices after plaintiff's accident, and plaintiff sued manufacturer for products liability, "the district court correctly identified the recall notices as subsequent remedial measures under Rule 407" and "did not abuse its discretion in excluding the notices"); *Chase v. General Motors Corp.*, 856 F.2d 17, 21 (4th Cir. 1988) ("we are of opinion that evidence of the fact of recall was improperly admitted under Rule 407"); *Hughes v. Boston Scientific Corp.*, 669 F. Supp. 2d 701, 715–16 (S.D. Miss. 2009) (in products liability case involving medical device, defendant's "recall notices were inadmissible to prove a defect" and "evidence of the voluntary [device] recall is irrelevant to the facts of the case and inadmissible under Rule 407"); *In re Propulsid Products Liability Litigation*, 2003 WL 1090235, *2 (E.D. La. Mar.11, 2003) ("product recalls are subsequent remedial measures for purposes of Rule 407") (citation omitted); *Pesce v. General Motors Corp.*, 939 F. Supp. 160, 165 (N.D.N.Y. 1996) ("Before a recall letter can be admitted into evidence, the plaintiff must lay a proper foundation, independent of the recall itself, establishing that a defect existed"); *Buckman v. Bombardier Corp.*, 893 F. Supp. 547, 554 (E.D.N.C. 1995) ("the engine stop switch recall letter functions as a subsequent remedial measure under Rule 407," and "Plaintiff is therefore barred from introducing evidence of the engine stop switch recall" to show a defect in the product).

*Hughes v. Stryker Sales Corp.*, Civil Action No. 08-0655, 2010 WL 1961051, at *4 n. 9 (S.D. Ala. May 13, 2010). This Court has reviewed the cases cited by the *Hughes* court and finds them instructive here. The Court has also considered *Kendall v. Bausch & Lomb, Inc.*, 2009 WL 1740008, at * 7 (D.S.D. 2009)

Plaintiff submits that he is also using the recall as evidence of the feasability of precautionary measures. The feasability inquiry has no relevance to the strict liability claim and only becomes relevant under a negligence theory if the Plaintiff first establishes that his motorcycle was defectively designed. Finally, the Plaintiff argues that the letter is admissible under Rule 802(d)(2) as the statement of a party opponent. The Court is not persuaded. The only impact of Rule 801(d)(2) is to reveal that the recall notice is not hearsay. It does not otherwise negate the operation of Rule 407.

The Plaintiff offers no evidence that the valves on the Plaintiff's motorcycle contained a defect. Any inference that the trier of fact could draw that the intake valves were defective merely because the Plaintiff lost power while operating the motorcycle at maximum RPMs is pure speculation. The Plaintiff, aware that there is no direct evidence of a defect, relies on *Ford Motor Co. v. Reed*, 689 N.E.2d 751, 755 (Ind. Ct. App. 1997), to assert that an expert can prove circumstantially that a specific defect caused a plaintiff's harm. In *Reed*, the court allowed a product liability claim to go forward because a fire occurring inside the console of a car was circumstantial evidence that there was a defect. The expert in *Reed* was able to testify that the fire, which occurred in a portion of the car that was not accessible to the plaintiffs, was caused

_____

(holding that a company's voluntary recall of blades used in LASIK surgery and changes in the blade manufacturing process were not admissible under Rule 407), and *Hammes v. Yamaha Motor Corp., U.S.A., Inc.*, 2006 WL 1195907, at *11–12 (D. Minn. May 4, 2006) (stating that evidence that Yamaha recalled motorcycles built with a particular throttle was a subsequent remedial measure that would not be admissible to prove the existence of a product defect, and eliminating the recall in its analysis of proximate cause in a product liability case). Additionally, the Court finds that the Plaintiff's argument that he has "independently proven that a defect that was the subject matter of a recall following an accident existed in the plaintiff's vehicle at the time of the plaintiff's accident" (Pl.'s Sur-Reply at 5), is not an accurate assessment of what the expert offered. As already noted, the only reliable testimony Kluga could provide is that if a defect existed in the valves, it could cause an accident like the one the Plaintiff experienced.

by an electrical defect. *Id.* In addition, the plaintiffs "all but eliminate[d] every possibility but a defect in the console" of the car. *Id.* In contrast, Kluga did not consider any other possible causes of the loss of engine power other than a defective intake valve. Nor did he indicate whether it is the kind of accident that would not have occurred but for a defect in the product. *Reed* is thus distinguishable. It is important to note that this Court is not demanding direct proof of a defect or even that the Plaintiff's motorcycle or its valves be examined; it agrees with the court's writings in *SCM Corp. v. Letterer*, 448 N.E.2d 686 (Ind. Ct. App. 1983):

> The courts would obviously prefer, even in a strict liability case, to have proof of a specific defect causing the harm. But this is not always possible, especially in cases where the product has been destroyed due to its malfunction. Most often the failure to produce the product will have a bearing only on the reliability of the circumstantial evidence of causation. If there is sufficient other evidence that harm was caused by some unspecified defect and no other cause likely, the plaintiff ordinarily has made a submissible cause."

*Id.* at 691 (quoting 1 Frumer & Friedman, Products Liability § 11.01[3][A], 217) (brackets omitted). Here, it is not necessarily the absence of the motorcycle and the valves that prevents the Plaintiff from meeting his burden. There is simply no admissible evidence from which a jury could reasonably infer that the Plaintiff's motorcycle was manufactured with a specific defect, such as the elimination of other causes of loss of engine power, or evidence that motorcycles manufactured within the same production run as that owned by the Plaintiff experienced higher incidences of problems with intake valves becoming fatigued in the neck area.

The Court finds that the Plaintiff has not presented sufficient evidence to show that the motorcycle contained a manufacturing or design defect that proximately caused the Plaintiff's accident and his injuries. For this same reason, there is no evidence that the Defendant could have warned of this danger. Ind. Code § 34-20-4-2.

**B.      Strict Liability Against the Defendant**

A separate reason supports granting summary judgment for the Defendant on the strict

liability claim. The IPLA provides for strict liability against a manufacturer, but not against a

seller, of a product:

> A product liability action based on the doctrine of strict liability in tort may not be
> commenced or maintained against a seller of a product that is alleged to contain
> or possess a defective condition unreasonably dangerous to the user or consumer
> unless the seller is a manufacturer of the product or of the part of the product
> alleged to be defective.

Ind. Code § 34-20-2-3. However, if a court is "unable to hold jurisdiction over a particular

manufacturer of a product or part of a product alleged to be defective, then that manufacturer's

principal distributor or seller over whom a court may hold jurisdiction shall be considered, for

the purposes of this chapter, the manufacturer of the product." Ind. Code § 34-20-2-4.

It is undisputed that the Defendant did not manufacture the motorcycle at issue in this

suit. (Williams Aff. ¶ 7, DE 38-1.) The Defendant contends that Yamaha Motor Co. Ltd. is the

Yamaha entity that was involved in the design, development, testing, and manufacture of the

2006 YZ250FV motorcycle, and that the Defendant is involved only in distributing Yamaha

motorcycles.[4] Thus, as a matter of law, the IPLA does not extend to the Defendant unless two

conditions are met: (1) the Defendant is Yamaha Motor Co.'s principal distributor or seller over

whom the court can hold jurisdiction; and (2) the Court is unable to hold jurisdiction over

Yamaha Motor Co., the actual manufacturer. *Kennedy v. Guess, Inc.*, 806 N.E. 2d 776, 781 (Ind.

2004). Whether a court can hold jurisdiction is a mixed question of fact and law. *Id.* at 782.

---

[4] The Defendant submits that its initial disclosures reveal this fact, but it does not designate any evidence in its summary judgment submissions in support of this statement. The Plaintiff does not dispute that Yamaha Motor Co., Ltd., a Japanese company, is the manufacturing entity.

The first condition does not appear to be in dispute. The Defendant is located in California and distributes and markets motorcycles to dealers throughout the United States. The Plaintiff's motorcycle was shipped and sold to Loomis Cycle Sales in Merrillville, Indiana, before the Plaintiff purchased it. Regarding the second condition, the only fact that the Court has before it concerning its ability to hold jurisdiction over Yamaha Motor Co. is that it is a Japanese company, and its product is distributed and sold throughout the United States. Neither the Plaintiff nor the Defendant have designated any additional evidence or provided legal analysis to address whether this Court can hold jurisdiction over Yamaha Motor Co. The Defendant argues that "Yamaha Motor Co., Ltd. has been subject to jurisdiction of hundreds of United States courts over the years" and "[t]here is no reason that the Court could not hold jurisdiction over [it]." (Def.'s Brief 12, DE 37) (*see also* Def.'s Reply Br. 5, DE 41) (arguing that Yamaha Motor Co., Ltd. is subject to the service requirements of the Hague convention and has been subject to the jurisdiction of Indiana courts, appearing in multiple suits over the years).[5] The Plaintiff, on the other hand, argues that the Defendant is liable as the principal distributor because it "has failed to prove" that this Court would have jurisdiction over Yamaha Motor Co. (Pl.'s Sur-Reply 8, DE 42.)[6]

---

[5] The Hague Convention is a multilateral treaty which was enacted for the purpose of creating a simple and expeditious procedure for service of process on foreign litigants in an effort to encourage judicial assistance and cooperation in international litigation.

[6] Personal jurisdiction is the court's power to bring a person into its adjudicative process and render a valid judgment over that person. *Saler v. Irick*, 800 N.E.2d 960 (Ind. Ct. App. 2003). Indiana Trial Rule 4.4, as amended in 2003, extended the reach of state court jurisdiction to "any basis not inconsistent with the Constitutions of this state or the United States." Ind. T. R. 4.4(A); *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 964 (Ind. 2006) (noting that Indiana's two-step process to determine jurisdiction had become one with the amendment of Trial Rule 4.4(A)). The enumerated acts found in Rule 4.4(A) serve as a checklist of activities that usually support jurisdiction, but the exercise of personal

Whether the Defendant can be sued as the American distributor of a product manufactured by an oversees entity is a potentially dispositive issue in this case. It is also an issue upon which the Plaintiff bears the burden of proof. The Defendant has pointed out to the Court that there is an absence of evidence to support the Plaintiff's claim against it. Summary judgment "should be rendered if the pleading, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Harney v. Speedway SuperAmerica. LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

---

jurisdiction is not limited to the listed acts. 857 N.E.2d at 967.

Thus, this Court has jurisdiction over Yamaha Motor Co. if it had sufficient minimum contacts with Indiana such that jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Miliken v. Meyer*, 311 U.S. 457, 463 (1940)). Personal jurisdiction may be either general or specific. If the defendant's contacts are continuous and systematic general business contacts, then a court may exercise "general jurisdiction" over the defendant even when the controversy is unrelated to those contacts. *Helicopteros Nacionales de Colom., S .A. v. Hall*, 466 U.S. 408, 414–15, 415 n. 9 (1984). In the absence of such continuous systematic contacts, "specific jurisdiction" may still be appropriate if the litigation is related to the defendant's contacts with the forum state. *Id.* at 414 n.8. A defendant who purposefully avails itself of the privilege of conducting activities within the forum state should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Specific jurisdiction is "not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue." *Purdue Research Found.*, 338 F.3d at 780 ("Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other activity."); *see also Burger King*, 471 U.S. at 474 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

As already mentioned, neither party has attempted to analyze the issue of personal jurisdiction. However, the facts, meager as they are, appear to support a conclusion that Yamaha Motor Co., Ltd. would be subject to the jurisdiction of his Court.

The Plaintiff has not presented any evidence that would support a claim that this Court does not have jurisdiction over Yamaha Motor Co. such that the exception to the general policy against strict liability against the distributor of a product should be invoked. For example, he has not pointed to any attempt to serve Yamaha Motor Co. or otherwise bring them into this suit that proved unsuccessful. Thus, the Plaintiff has not produced evidence that is sufficient to create a triable issue of fact on this element of his case. *See Lewis v. CITGO Petroeum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009) (stating that if the movant could show that the nonmovants had not produced evidence sufficient to create a triable issue of fact on any of the elements of their claim, summary judgment was appropriate). The Plaintiff may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## C.      Implied Warranty of Merchantability

In Count II of the Plaintiff's Complaint, he asserts that the motorcycle was not of mechantable quality. A warranty that a good is merchantable is implied if the seller of that good is a merchant with respect to goods of that kind. Ind. Code § 26-1-2-314(1). In order to be merchantable, a good must at least: (a) pass without objection in the trade under the contract description; (b) in the case of fungible goods, be of fair, average quality; (c) be fit for the ordinary purposes for which such goods are used; (d) run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved; (e) be adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any. *Id.* § 314(2). The

Plaintiff has not presented evidence from which a jury could conclude that the motorcycle at issue did not meet these standards, and his claim fails as a matter of law.

**D.     Punitive Damages Claim**

In Count III of the Complaint, the Plaintiff alleges that his injuries were the direct and proximate result of the willful and malicious conduct of the Defendant, and that the Defendant acted in reckless indifference to the Plaintiff's safety. Because this claim is predicated on a finding of liability on the Plaintiff's other claims, summary judgment is appropriate for the Defendant. *See Cheatham v. Pohle*, 789 N.E.2d 467, 473–74 (Ind. 2003) ("A claim for punitive damages can be sustained only if it is accompanied by a viable claim for compensatory damages.").

**CONCLUSION**

For the foregoing reasons, the Defendant's Motion for Summary Judgment [DE 36] is GRANTED. The Clerk is directed to enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on July 2, 2010.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION